IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 10-204 |
| | ) Judge Nora Barry Fischer |
| PAUL PERMINTER, JR., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

I. INTRODUCTION

Presently before the Court is the Government's Motion for Reconsideration of the Court's January 30, 2012 Memorandum Opinion and Order granting Defendant Paul Perminter Jr.'s ("Defendant") motion to suppress evidence in this case. (Docket Nos. 62, 63). In that decision, the Court ruled that the evidence seized by parole and police officers during a warrantless search of Defendant's apartment was obtained in violation of his Fourth Amendment rights and suppressed all such evidence as well as Defendant's statements to law enforcement as fruit of the poisonous tree. (Docket No. 57); *see also United States v. Perminter*, Cr. No. 10-204, 2012 WL 273349 (W.D.Pa. Jan. 30, 2012). The Government maintains that this decision should be reconsidered and alleges that the Court overlooked prevailing precedent, including *Samson v. California*, 547 U.S. 843, 846 (2006) and committed several other factual and legal errors in its findings of fact and conclusions of law supporting its ruling to suppress the challenged evidence in this case. (Docket No. 63). Defendant counters that the Court should not reconsider its decision on the basis of the Government's argument relying on its interpretation of the *Samson* decision because this argument was not previously raised by the Government. (Docket No. 66). Defendant further maintains that the Court's factual findings and legal conclusions are supported by the evidence and prevailing precedent. (*Id.*). Upon consideration of the parties' positions,

and for the following reasons, the Government's Motion [62] is DENIED.

II. BACKGROUND

The Court's findings of fact and conclusions of law are set forth in the January 30, 2012 Memorandum Opinion and, given the parties' familiarity with the matter, need not be fully restated here. (Docket No. 57). Instead, the Court will focus its analysis on the facts and law relevant to the instant motion for reconsideration.

At the outset, the Court notes that the parties were given a full and fair opportunity to thoroughly litigate Defendant's motion to suppress as the parties were ordered to: (1) submit pre-hearing briefing in accord with the deadlines set forth in the Local Rules of Court for the Western District of Pennsylvania, *see* W.D.Pa.LCrR 12.C., and this Court's Orders extending said deadlines, (*see* Docket Nos. 18, 20, 26, 32); (2) present evidence and oral argument at a motion hearing on October 12, 2011, (*see* Docket No. 55); and (3) file proposed findings of fact and conclusions of law and responses to same after the hearing pursuant to a post-hearing briefing schedule, (*see* Docket No. 49). As the Court pointed out in its decision, the Government's initial response to Defendant's suppression motion was accepted by the Court as a *nunc pro tunc* filing necessitated by the Government's failure to abide by the 14-day response deadline in the Local Rules. (Docket Nos. 31, 32). The Government did not submit proposed findings of fact and conclusions of law or any response to Defendant's proposed findings of fact and conclusions of law pursuant to the Court's post-hearing deadlines. (*See* Docket No. 49). It also did not seek prior extensions of any of these deadlines. As a consequence, the Court took the matter under advisement as of January 18, 2012 and issued its decision on January 30, 2012. (Docket No. 57).

The suppression issue that was argued before the Court in the parties' briefing and during

the suppression hearing was whether Parole Officer William Kimmel had reasonable suspicion to believe that Defendant had committed a crime or parole violation prior to conducting a warrantless search of Defendant's apartment on June 18, 2009. (*See* Docket No. 57 at 13). The parties never disputed that reasonable suspicion was the appropriate legal test to be applied in this case. To this end, Defendant argued in all of his briefing and at oral argument that the search of his residence was unlawful because it was not based on reasonable suspicion. (Docket Nos. 30, 34, 55, 56). Likewise, the Government clearly conceded that reasonable suspicion was the relevant standard in this case in both its pre-hearing brief and during argument at the motion hearing. (Docket No. 33, 55). For example, in its brief, the Government explicitly stated, among other things, that:

> Parole officers may conduct warrantless searches of parolees and their residences based on "no more than reasonable suspicion" of parole violations. *Knights*, 534 U.S. at 119; *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987); *United States v. Baker*, 221 F.3d 438, 443-44 (3d Cir. 2000); *United States v. Hill*, 967 F.2d 902, 910 (3d Cir. 1992).

(Docket No. 33 at 24, ¶ 5). Government counsel then repeatedly argued that reasonable suspicion was the appropriate standard at the motion hearing. (*See* Docket No. 55 at 8, 13, 134, 135, 136, 137, 145, 147, 148). In fact, government counsel stated the following:

> The [ … ] reasonable suspicion standard is what we both cite and a lot of similar cases are cited in both briefs. Although, obviously, we draw opposite conclusions from it. And I think what we're looking at here is a very fact-specific situation for the Court.
>
> So, I don't think there is any need to haggle over the actual law.

(*Id.* at 134).

In its brief, the Government cited *Samson* for the proposition that the Court must look to the totality of the circumstances to determine if a search was reasonable under the Fourth

3

Amendment. (Docket No. 33). Except for this citation to *Samson* for a generally well-settled legal proposition, the Government never took the position that the *Samson* decision overruled Third Circuit jurisprudence that reasonable suspicion was required before a warrantless search could be conducted pursuant to the standard Pennsylvania parole condition at play in this case. (*Id.*; *see also* Docket No. 55). On the other hand, Defendant raised the *Samson* decision for a completely different purpose: to argue that the contours of the Fourth Amendment rights of a parolee are determined, in part, by looking to state law. (Docket No. 55 at 124). Thus, the Court did not address the import of *Samson* in its Memorandum Opinion as that decision was only casually raised by the parties and the legal standard was not in dispute.

In brief summary, the Court held that the Government failed to meet its evidentiary burden to demonstrate that Parole Officer William Kimmel – the only witness called by the Government at the hearing – had reasonable suspicion of any alleged criminal acts or parole violations by Defendant prior to conducting the tactical warrantless search of his apartment at 8:19 a.m. on a Thursday morning along with a contingent of other fully armed parole and police officers. (See Docket No. 57). The Court found, among other things, that Kimmel relied only on an anonymous tip from an unidentified telephone informant that Defendant possessed drugs and a gun inside the apartment but made no effort to corroborate the allegations of same before executing the search and that this evidence did not amount to reasonable suspicion under the law. (*Id.*). As a consequence, the Court ordered that the evidence seized from Defendant's apartment be suppressed along with all statements Defendant made to law enforcement. (*Id.*).

The Government filed its motion for reconsideration one week after the Court's decision, on February 6, 2012. (Docket No. 63). In support of same, the Government comments that it "acknowledges and regrets" its failure to follow this Court's Order directing it to file proposed

findings and fact and conclusions of law but provides no explanation for its counsel's dilatory behavior. (*Id.* at 1). Instead, the Government assails the Court's analysis of the evidence in the instant case and maintains that the Court overlooked prevailing precedent in its decision. (*Id.*). Defendant filed his brief in opposition on February 13, 2012. (Docket No. 66). He argues that the Court should not reconsider its rulings on his suppression motion. (*Id.*). Neither party has sought leave of court to submit any further briefing and/or requested that the Court hold oral argument. As a result, the Court considers the present motion fully briefed and ripe for disposition.

III. LEGAL STANDARD

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Kabacinski v. Bostrom Seating, Inc.*, 98 F. App'x 78, 81 (3d Cir. 2004) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Because "federal courts have a strong interest in the finality of judgments," *United States v. Hoey*, Cr. No. 09-200, 2011 WL 748152, at *2 (W.D.Pa. Feb. 15, 2011) (citation omitted), the standard that must be met to prevail on a motion for reconsideration is high, *see Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004).

The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *United States v. Banks*, Crim No. 03-245, 2008 WL 5429620, at *1 (W.D.Pa. Dec. 31, 2008) (citing *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). A motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the Court, *see Hoey*, 2011 WL

748152, at *2 (citation omitted), or for addressing arguments that a party had the opportunity to raise before the Court's decision, *see United States v. Dupree*, 617 F.3d 724, 732-33 (3d Cir. 2010) (quotations omitted). Rather, such a motion is appropriate only where the court misunderstood a party or where there has been a significant change in law or facts since the Court originally ruled on that issue. *Hoey*, 2011 WL 748152, at *2.

III. ANALYSIS

The Government does not seek reconsideration as a result of an alleged change in the controlling law nor does it seek to introduce any new evidence at this stage. (*See* Docket No. 63). Instead, the Government's motion focuses on alleged factual and legal errors in the Court's Memorandum Opinion and Order. (*Id.*). The Government sets forth alternative bases for reconsideration: (1) the Court erred in concluding that the search of Defendant's apartment was not supported by reasonable suspicion; and (2) even if a reasonable suspicion of criminal activity did not exist, the search of Defendant's apartment by his parole officer did not violate the Fourth Amendment following the Supreme Court's decision in *Samson*. (*Id.*). Naturally, Defendant opposes reconsideration of the Court's Memorandum Opinion and Order on both grounds. (Docket No. 66). The Court agrees with Defendant's position and will not reconsider its decision suppressing the evidence in this case.

    *a. The Government's New Legal Theory Is Not Properly Before The Court*

The Court first turns to the Government's argument that the Supreme Court's decision in *Samson* overruled Third Circuit precedent and stands for the proposition that a suspicionless search of a parolee's residence is constitutionally reasonable when the parolee has executed a waiver consenting to warrantless searches of his residence. (*See* Docket No. 63). Defendant objects to the Court's consideration of this argument because it was not previously raised by the

Government and, thus, is raised in the first instance in the context of the present motion for reconsideration. (Docket No. 66). Alternatively, Defendant maintains that the Government's argument is without merit. (*Id.*). The Court agrees with Defendant that the Government's newly raised legal theory should not be considered at this stage because this argument was waived by the Government under Rule 12(e) of the Federal Rules of Criminal Procedure and otherwise violates the general principles applicable to motions for reconsideration.

Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure instructs that motions to suppress evidence must be raised before trial. FED. R. CRIM. P. 12(b)(3)(C). Rule 12(e) further specifies that:

> [a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver.

FED. R. CRIM. P. 12(e). The United States Court of Appeals for the Third Circuit has made clear that the waiver provision of Rule 12(e) applies equally to the Government's arguments in opposition to a motion to suppress. *See Dupree*, 617 F.3d at 728 (quoting *United States v. Stearn*, 597 F.3d 540, 551 n.11 (3d Cir. 2010)) (the Government "is subject to the ordinary rule that an argument not raised in the district court is waived on appeal"). Thus, the Government's theories of admissibility countering a suppression motion may be waived if not timely raised in accordance with the District Court's scheduling orders. *See id.* The Government also cannot avoid a Rule 12(e) waiver by raising its arguments before the District Court for the first time in a motion for reconsideration after the motion to suppress has been decided. *See Dupree*, 617 F.3d at 732 ("the Government waived its independent-crime argument by failing to raise it before the District Court ruled on Dupree's motion to suppress— *i.e.,* by the 'deadline' set by Rule 12(e)."). As the Court of Appeals explains in *Dupree*:

7

> [t]his raise-or-waive rule is essential to the proper functioning of our adversary system because even the most learned judges are not clairvoyant. *See United States v. Nee,* 261 F.3d 79, 86 (1st Cir. 2001). Thus, we do not require district judges to anticipate and join arguments that are never raised by the parties. *See United States v. Griffiths,* 47 F.3d 74, 77 (2d Cir. 1995). Instead courts rely on the litigants not only to cite relevant precedents, but also to frame the issues for decision. *See id.* ("The government was required to offer some argument or development of its theory. It failed to do so, and has therefore waived the issue.").

*Dupree*, 617 F.3d at 728.

This Court's inquiry under Rule 12(e) is twofold: whether the argument was raised by the Government; and, if not, whether the Government has established "good cause" for its failure to timely submit its arguments to the Court. *See* FED. R. CRIM. P. 12(e). In this Court's estimation, the Government's motion for reconsideration clearly fails both prongs of this test.

The Government maintains that this Court "overlooked" *Samson* – which it describes as "controlling precedent" – in rendering its decision on the suppression motion. (Docket No. 63). The Government also suggests now that *Samson* "arguably overruled" Third Circuit precedent which requires that reasonable suspicion must be established before conducting a warrantless search of a parolee's residence in Pennsylvania. (*Id.*). Thus, the Government's position set forth in its motion for reconsideration is that it did not need to establish that Parole Officer Kimmel had reasonable suspicion that Defendant had committed a crime or a parole violation before conducting the search of his residence. (*Id.*). However, this argument was never presented to the Court during the pendency of the suppression proceedings.

While the Government did cite to *Samson* in its opposing brief, "simply citing a case in the District Court is not sufficient to raise all arguments that might flow from it." *Dupree*, 617 F.3d at 728 (citing *Nee*, 261 F.3d at 86). Instead, the Government was required to "'unequivocally put its position before the trial court at a point and in a manner that permits the

8

court to consider its merits.'" *Id.* (quoting *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999)). The Government not only failed to raise its new argument relying on *Samson*, its counsel repeatedly conceded that reasonable suspicion was the appropriate standard in both its opposition brief and at oral argument, despite its passing reference to the case. (Docket Nos. 33 at 24, ¶ 5; 55 at 8, 13, 134-37, 145, 147-48).

In addition, the Court does not believe that the Government's bare citation to *Samson* should have prompted the Court to anticipate and adopt the novel interpretation of *Samson* that the Government now advocates in support of its motion for reconsideration. *See Dupree*, 617 F.3d at 728. As Defendant points out and as has been confirmed through the Court's own independent research, the United States Court of Appeals for the Third Circuit has not extended *Samson* to lower the legal standard applied to suppression motions brought by parolees within this Circuit since that decision was rendered in 2006. Indeed, the Court of Appeals explicitly declined to consider a similar argument in *United States v. Henry*, 360 F. App'x 395, 397 (3d Cir 2010) and evaluated whether parole agents had reasonable suspicion to conduct a search of a parolee's residence.[1] The reasonable suspicion standard has also been applied by the Court of Appeals in numerous post-*Samson* decisions involving parolees, including *United States v. Lynch*, --- F. App'x ----, 2012 WL 256038 (3d Cir. Jan. 30, 2012), a decision which was issued on the same day as the Court's Memorandum Opinion in the present matter. *See e.g., United States v. Crutchfield*, 444 F. App'x 526 (3d Cir. 2011); *United States v. Yeager*, 351 F. App'x 718 (3d Cir. 2009); *United States v. Noble*, 326 F. App'x 125 (3d Cir. 2009); *United States v. Eggleston*, 243 F. App'x 715 (3d Cir. 2007). Moreover, at least one District Court has rejected

---

[1] Specifically, in *Henry*, the Court of Appeals held that "[w]e agree with the District Court that the parole agents clearly possessed reasonable suspicion to conduct the searches, and we therefore need not decide whether the Supreme Court's decision in *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L.Ed.2d 250 (2006), otherwise permits suspicionless searches in these circumstances." *Henry*, 360 F. App'x at 397.

9

the argument that the Government advocates for the first time in its motion for reconsideration in this case, *see United States v. Rivera*, 727 F.Supp.2d 367 (E.D. Pa. 2009), as have intermediate Pennsylvania appellate courts, *see e.g., Commonwealth v. Hunter*, 963 A.2d 545 (Pa. Super. 2008) *and Commonwealth v. Colon*, 31 A.3d 309, 314-15 (Pa. Super. 2011).

In sum, the Government did not appropriately raise its argument that the *Samson* decision lowers the legal standard applicable to Defendant's suppression motion. Further, it is clear that the Government's interpretation of *Samson* has not been adopted by the United States Court of Appeals for the Third Circuit such that it would bind this Court. *See United States v. Mitlo*, 714 F.2d 294, 298 (3d Cir. 1983) (citation omitted) ("precedents set by higher courts are conclusive on courts lower in the judicial hierarchy."). Therefore, the Court finds that pursuant to Rule 12(e), said argument is waived, absent a showing of "good cause." *See* FED. R. CRIM. P. 12(e).

Here, the Government has made no effort to demonstrate "good cause" for its failure to previously raise this argument during the pendency of the suppression motion. (*See* Docket No. 63). In fact, the motion was pending for a full eight months without any attempt by the Government to bring this argument to the Court's attention. To this end, the motion to suppress was filed on May 26, 2011, (Docket No. 30), and the Court did not issue its decision until January 30, 2012, (Docket No. 57). In between, the Court set several explicit deadlines for the Government to present its arguments in accordance with Rule 12(c), including: in its responsive brief which was due on June 24, 2011, (Docket No. 32); at the motion hearing held on October 12, 2011 (Docket No. 55); and in proposed findings of fact and conclusions of law and responses due on December 14, 2011 and January 17, 2012, respectively – which the Government "acknowledges and regrets" it failed to even submit, (*see* Docket No. 63). In all, despite multiple opportunities, the Government failed to timely make the instant argument – which, as discussed

above, runs directly counter to the position taken during the suppression proceedings – and has not given any reasons why the argument was not raised earlier. This Court holds that such a diametric change in positions without providing any explanation for same is untenable in light of the facts and circumstances of this case. Hence, good cause has not been established. *See* FED. R. CRIM. P. 12(e). For these reasons, the suppression argument relying on *Samson* was waived by the Government.

Even if the Government's argument was not waived under Rule 12(e), it also fails under the general standard applicable to motions for reconsideration. The Court of Appeals has held that such motions are not to be used as vehicles "for addressing arguments that a party should have raised earlier" and likewise do not "empower litigants ... to raise their arguments, piece by piece." *Dupree*, 617 F.3d at 732 (quotations omitted). In this case, the Government certainly could have argued its alternative positions from the outset[2] and was given multiple opportunities to present all of its arguments to the Court. (Docket Nos. 32, 49, 55). But, the Government did not do so; it conceded that the reasonable suspicion standard applied in this case and argued that it met its evidentiary burden to establish same at the motion hearing. (Docket Nos. 33, 55). The Court finds that the Government cannot use a motion for reconsideration to raise new arguments in an attempt to salvage its otherwise deficient case after the Court has already issued its decision granting the Defendant's suppression motion. *See Dupree*, 617 F.3d at 732. Accordingly, the Government's motion for reconsideration is denied to the extent that it relies on *Samson*.

b. *The Reasonable Suspicion Standard Was Not Met In This Case*

The Government also contends that the Court erred in ruling that it failed to meet its

---

[2] In fact, the Government did provide an alternative argument that the "knock and announce" rule was not violated by the officers' entrance into Defendant's apartment. (*See* Docket No. 33 at 28-31). However, the Court determined that this argument had no applicability to the instant case because it was a warrantless search. (*See* Docket No. 57 at 14, n.8). The Government has not challenged this aspect of the Court's decision. (*See* Docket Nos. 62, 63).

evidentiary burden to establish that the search of Defendant's apartment was supported by reasonable suspicion in this case. (Docket No. 63). This issue was fully and fairly litigated by the parties and was conclusively decided by the Court in favor of Defendant. As is discussed above, the purpose of a motion for reconsideration is not to permit parties to relitigate matters which have already been decided by the Court or to express their disagreements with the Court's rulings. *See Hoey*, 2011 WL 748152, at *2. Instead, a party must set forth "compelling" factual or legal errors to warrant reconsideration of a prior decision. *Dupree*, 617 F.3d at 732. In this Court's opinion, the Government has failed to meet its burden on reconsideration as the alleged factual and legal errors it raises now are without merit. As the Court has already set forth its findings of fact and conclusions of law in support of its decision, (*see* Docket No. 57), it will only briefly analyze the Government's arguments.

First, the Court notes that no restrictions were placed on the parties at the suppression hearing regarding the number of witnesses that each side were permitted to call or the length of the witness's testimony. (*See* Docket Nos. 36, 38, 42, 55). However, after acknowledging that it had the burden to establish reasonable suspicion in this case, the Government elected to prosecute the suppression motion by calling a single witness, Parole Officer Kimmel, in support of its position. (Docket No. 55 at 4). Thus, the Government's case rested with this individual's testimony. But, the Court did not find Kimmel's testimony to be entirely credible and specifically found that Kimmel was unable to provide sufficient detail supporting the tipster's disclosure to him of the location of the gun, drugs and other items within Defendant's apartment. (*Id.* at 5-6, 17). The Government has not questioned the Court's credibility finding; therefore, it stands. *See United States v. Peterson*, 622 F.3d 196, 201 (3d Cir. 2010) (noting that it is the District Court's role to weigh the evidence and the credibility of the witnesses on a motion to

suppress).

The Government's other challenges to the Court's decision on the reasonable suspicion issue raise both factual and legal matters that can be grouped into two separate categories, as follows: (1) whether the informant in this case was truly anonymous; and, (2) whether the facts established at the motion hearing were sufficient to find that reasonable suspicion supported the search under Third Circuit precedent analyzing anonymous tips. (Docket No. 63).

Turning to the Government's position regarding the informant, the Court rejects the assertion that the informant in this case was not truly anonymous. The Government contends that a single passage from Kimmel's testimony during the motion hearing demonstrates that the identity of the caller was known to Kimmel but not disclosed during his testimony for confidentiality reasons. (Docket No. 63 at 11). To this end, Kimmel testified that "[t]he caller wished to remain anonymous, and I agreed to honor that confidentiality. *They did provide specific information of activity in the house that I believe would compromise the person's identity if I was to testify to that in Court.*" (*Id.* (emphasis added by the Government)). But, the Government's assertion that the italicized portion of this quote proves that the informant was not truly anonymous is neither supported by the cited passage nor any other evidence in the record. As the Court previously held, it must determine:

> whether the caller was truly anonymous from Officer Kimmel's perspective. *United States v. Nelson*, 284 F.3d 472, 481-82 (3d Cir. 2002). The cases teach that the fact that the informant's name or identity is withheld from the officer is not dispositive. *United States v. Yeager*, 351 F. App'x 718, 720 (3d Cir. 2009); *Nelson*, 284 F.3d at 481-82. Instead, the Court must consider whether the officer obtained any information about the caller from which he could locate the informant and hold him or her responsible for providing fabricated information. *Nelson*, 284 F.3d at 482. Facts that may elucidate this analysis include disclosures of: telephone numbers; addresses; relationships of the caller to the accused; or the ability of another officer or witness to identify the informant.

13

*Id.*

(Docket No. 57 at 15). The testimony cited by the Government does not meet this standard because it did not disclose that Kimmel was aware of the caller's identity, contact information, or relationship to the accused. It also did not permit Kimmel or any government witness to identify the informant. In this Court's opinion, Kimmel's cautiousness arose from his belief that providing details of the *activities* within the apartment would possibly provide a basis from which *Defendant* may potentially be able to determine his or her identity – not Kimmel or any other government witness. And, Kimmel's testimony, as a whole, clearly demonstrated that he did not know the caller's identity. (Docket No. 57 at 15-6). Therefore, the Court's finding that the caller was truly anonymous finds sufficient support in the record and will not be reconsidered.

The Government also maintains that the Court erred by failing to consider the five factors set forth by the Court of Appeals in *United States v. Torres*, 534 F.3d 207, 213 (3d Cir. 2008) which are helpful to the analysis of whether an anonymous tip is supported by reasonable suspicion.[3] Admittedly, this Court did not specifically cite to *Torres* or combine the five factors in the manner outlined in *Torres* and other Third Circuit decisions, including *United States v. Brown*, 448 F.3d 239 (3d Cir. 2006).[4] However, like its other arguments, the Government did not

---

[3] The *Torres* factors are as follows:
> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.
> (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.
> (3) The content of the tip is not information that would be available to any observer.
> (4) The person providing the information has recently witnessed the alleged criminal activity.
> (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility[.]

*Torres*, 534 F.3d at 210-11.

[4] The Court notes that while *Torres* was not cited in its decision, *Brown* was relied upon for several legal

maintain that this Court should follow *Torres* prior to filing the instant motion for reconsideration. (*See* Docket Nos. 33, 55). In any event, a fair reading of this Court's decision demonstrates that the legal principles underlying each of the five non-exhaustive factors were considered, among other things, in determining that the totality of the circumstances did not support a finding of reasonable suspicion in this case. To this end, the Court considered:

> (1) the nature and extent of the anonymous telephone call;
>
> (2) the fact that Kimmel obtained no information regarding the anonymous informant from which he or she could be located and/or held responsible for making a false claim;
>
> (3) the fact that Kimmel's testimony regarding the content of the tip itself was not credible as it was recorded after the contraband was found in specific locations in the house, seriously calling into question the supposed specificity of the description of the drugs and other contraband and the locations of same within the apartment as stated in two reports which he relied on during his testimony;
>
> (4) the fact that the caller advised that the alleged illegal activity occurred "within the last week" rather than contemporaneously with the telephone report; and,
>
> (5) the fact that aspects of the informant's tip which contained predictive information were not corroborated in any fashion by Kimmel or the other law enforcement agents involved in the search.

(Docket No. 57 at 15-21). The Court further considered the facts that Kimmel was aware of Defendant's prior criminal record but also that as the supervising agent assigned to Defendant's case, Kimmel knew that Defendant had not committed parole violations of any kind during the entirety of his parole. (*Id.* at 20-1).

In sum, the Government sets forth a contrary interpretation of the evidence in this case and expresses its disagreement with the Court's conclusion that the evidence must be suppressed.

---

principles, including its reasonable suspicion analysis. (*See* Docket No. 57 at 14-5, 24).

(Docket No. 63). This is not a valid basis for a motion for reconsideration, especially considering that the Government should have provided its arguments after the evidentiary record was closed in conjunction with its filing of proposed findings of fact and conclusions of law or its response to the Defendant's proposed findings of fact and conclusions of law but failed to do so. Accordingly, the Government's motion for reconsideration must be denied.[5]

IV. CONCLUSION

Based on the foregoing, the Government's Motion for Reconsideration [62] is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: February 28, 2012

cc/ecf: All counsel of record

Paul Perminter Jr., c/o Marketa Sims AFPD

---

[5] In so holding, the Court notes that the Government's motion for reconsideration contains several factual assertions which constitute exaggerations of the evidence and find no support in the record, requiring further comment from the Court. Of note, the Government suggests that: (1) the informant may have known that Kimmel was Defendant's parole agent; (2) that the telephone records of the parole department could have been retrieved to locate the informant's contact information; and (3) that Defendant failed to return multiple messages left by Kimmel for him. (*See* Docket No. 63). As to the first point, the evidence shows at most that the anonymous tipster contacted the parole department with information pertaining to Defendant and the secretary who answered the initial call forwarded it to Kimmel as he was assigned to Defendant's case. (Docket No. 55 at 51). The Government did not establish by a preponderance of the evidence that the caller knew that Kimmel was the assigned agent because the secretary who initially interacted with this individual was not called to testify. (*Id.*). On the second matter, the Government did not present any evidence that the telephone call in this case could be traced through "phone records" and the suggestion that this specific call could have been traced in an effort to locate the caller is purely speculative. (Docket No. 57 at 4-6). Finally, as the Court found in its decision, Kimmel made one attempt to contact Defendant by phone but Kimmel did not believe that Defendant's failure to return his call violated any condition of his parole. (*Id.* at 4).